■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANIEL A. HORAN, Appellant. [737 NYS2d 145] —Lahtinen, J. Ap-

peals (1) from a judgment of the County Court of Greene County (Pulver, Jr., J.), rendered March 31, 2000, upon a verdict convicting defendant of the crime of murder in the second degree, and (2) by permission, from an order of said court, entered March 19, 2001, which denied defendant's motion pursuant to CPL 440.10 and 440.20 to vacate the judgment of conviction and set aside the sentence, without a hearing.

Defendant was indicted by a grand jury for two counts of murder in the second degree (intentional murder and reckless murder) and leaving the scene of a personal injury accident. The charges arose from an incident on the evening of June 10, 1999 along State Route 23 in the Town of Ashland, Greene County, when defendant intentionally swerved his vehicle onto the shoulder of the road, striking Elizabeth De Wald, who died from her resultant injuries.

Arrested by the State Police that same evening, defendant made several inculpatory statements and was committed to the Greene County Jail. While housed there, defendant, who had a documented history of suffering from a schizoaffective disorder, began acting strangely, refusing nourishment and attempting to injure himself. Defendant was examined by the Greene County Mental Health Clinic and, when his bizarre behavior continued, was transferred in July 1999 to a state psychiatric facility where he was treated with psychotropic drugs. Upon defendant's return to the Greene County Jail in September 1999, County Court ordered a mental competency examination (*see*, CPL art 730) and two psychiatrists determined that he was mentally incompetent to stand trial. Some months later, the same psychiatrists found defendant competent to stand trial, a determination shared by the prosecution and defense expert psychiatrists who were retained by each side to evaluate defendant and to testify at trial regarding defendant's defense of mental disease or defect (*see*, Penal Law § 40.15; CPL 250.10).

At trial on the murder counts,[1] defense counsel made the strategic decision to enter into an agreement with the People involving a stipulation of facts. The stipulation recited, inter alia, that "defendant intentionally steered his vehicle to the right so that it crossed the solid white line marking the edge of the travelled (*sic*) portion of the roadway, onto the shoulder of the road and intentionally drove his car into the back of Elizabeth De Wald causing her extensive and severe injuries which

---

1. Prior to trial, County Court, sua sponte, dismissed the charge of leaving the scene of a personal injury accident as jurisdictionally defective.

caused her death." In furtherance of the agreement, the stipulation and defendant's statement, given to the State Police on the evening of his arrest in which he stated that he intentionally "drove [his] car into a woman[']s back * * * because Chris Felter and John took over the world," were read to the jury at the beginning of the People's proof. Defense counsel decided not to call defendant's mother and aunt to testify regarding defendant's mental illness, evidence that was introduced at trial through defendant's medical records from several mental health treatment providers.

Defendant was convicted of intentional murder by the jury, which rejected his defense of mental disease or defect. After defendant moved unsuccessfully for a mistrial and to set aside the verdict, County Court sentenced him to an indeterminate prison term of 25 years to life. Subsequent to his sentencing, defendant moved to vacate his judgment of conviction and sentence (see, CPL 440.10, 440.20) on the ground that he received ineffective assistance from his defense counsel. County Court denied the motion without a hearing. Defendant now appeals from his judgment of conviction and, by permission (see, CPL 450.15 [1]), from the summary denial of his CPL article 440 motion.

Defendant first contends that County Court erred by failing to require a competency hearing under CPL article 730 to ensure that he was competent to stand trial. We disagree. A criminal defendant is presumed to be competent (see, People v Gelikkaya, 84 NY2d 456, 459) and a defendant's history of psychiatric illness alone is not sufficient to mandate a competency hearing (see, People v Morgan, 87 NY2d 878, 881). When a court has a "reasonable ground for believing that a defendant is in such a state of idiocy, imbecility or insanity that he is incapable of understanding the charge, indictment or proceedings or of making his defense, it is the duty of the court to direct him to be examined in these respects" (People v Smyth, 3 NY2d 184, 187). However, "a defendant is not entitled, as a matter of right, to have the question of his capacity to stand trial passed upon before the commencement of the trial, if the court is satisfied from the available information that there is no proper basis for questioning the defendant's sanity" (People v Armlin, 37 NY2d 167, 171).

The decision to order such a hearing lies within the sound discretion of the trial court (see, People v Tortorici, 92 NY2d 757, 766, cert denied 528 US 834; People v Morgan, supra at 879; People v Gensler, 72 NY2d 239, 247, cert denied 488 US 932) and "should be upheld when [the trial judge] complies

with the letter and spirit of [the] statutes" (*People v Gensler*, *supra* at 244-245). Here, County Court ordered competency examinations of defendant at two different stages of this criminal proceeding. The first examination resulted in a determination that defendant was mentally incompetent to stand trial; the later examination determined that defendant was mentally competent to stand trial. Subsequently, County Court, acting on its own observations of defendant and the opinions of four psychiatrists (including the two psychiatrists who had previously determined that defendant was incompetent), each of whom opined that defendant was competent to stand trial and assist in his defense, adjudged defendant to be "not an incapacitated person within the meaning of CPL 730.10 (1) but, rather that [he] is fit to proceed to trial." Our review of the record reveals no abuse of County Court's discretion arriving at this determination, and we perceive no other basis for upsetting the decision that a competency hearing was not warranted (*see, People v Russell*, 74 NY2d 901, 902). Consequently, defendant's contention of error must be rejected.

Defendant next contends that he was denied his fundamental right to be present at all the material stages of his trial (*see,* CPL 260.20) requiring reversal of his conviction. Because our review of the record reveals that defendant was present for or waived his presence at the material stages of his trial, we reject this claim.

The right of a defendant under CPL 260.20 to be present during the trial of an indictment[2] encompasses every ancillary proceeding which is a material stage of the trial (*see, People v Roman*, 88 NY2d 18, 25). Material ancillary proceedings are those at which a defendant's presence "could have had a substantial effect on [his or her] ability to defend against the charges" (*People v Sloan*, 79 NY2d 386, 392). "A defendant's presence is substantially and materially related to the ability to defend when the defendant 'can potentially contribute to the proceeding' under scrutiny" (*People v Roman, supra* at 26, quoting *People v Sprowal*, 84 NY2d 113, 118) or when a defendant's "presence would have been useful in ensuring a more reliable determination" of a particular proceeding (*People v Morales*, 80 NY2d 450, 454). The statutory right to be present (*see,* CPL 260.20) has been held to include proceedings involving "the impaneling of the jury, the introduction of evidence, the summations of counsel, and the court's charge to the jury" (*People*

_____

2. This right also finds support from the Confrontation and Due Process Clauses of the Federal and State Constitutions (*see,* US Const 6th, 14th Amends; NY Const, art I, § 6; *see also, People v Dokes*, 79 NY2d 656, 659).

*v Mullen*, 44 NY2d 1, 4; *see, People v Velasco*, 77 NY2d 469, 472). Additionally, a defendant's presence is required at a *Sandoval* hearing (*see, People v Dokes*, 79 NY2d 656), certain side-bar conferences involving the questioning of prospective jurors (*see, People v Antommarchi*, 80 NY2d 247) and further instructions to the jury after it has commenced deliberations (*see, People ex rel. Bartlam v Murphy*, 9 NY2d 550, 553).

Defendant claims error resulting from violations of CPL 260.20 as a result of his absence from conferences between County Court and counsel regarding his competency, the admission and reading of the stipulated facts and defendant's statement, the inquiry of a seated juror, the charge conference and the presentence conference where the testimony of the victim's family was discussed. We find none of these proceedings involved a material stage of defendant's trial where his presence would have given him a meaningful opportunity to affect the outcome (*see, People v Roman, supra* at 26-27) and do not provide a basis for reversal of his conviction. Notably, these conferences involved only questions of law or procedure, not requiring defendant's presence (*see, People v Velasco, supra* at 472). Additionally, we note that a defendant's absence from a charge conference[3] (*see, id.*) and from the inquiry of an already seated and sworn juror (*see, People v Mullen; supra*) has been held not to constitute error.

Defendant next contends that his conviction must be vacated and sentence set aside because they were obtained in violation of his right to effective assistance of counsel. A defendant is constitutionally guaranteed the right to effective assistance of counsel (*see,* US Const 6th Amend; NY Const, art I, § 6), but "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" (*People v Baldi*, 54 NY2d 137, 147). Defendant claims that the cumulative effect of the numerous errors of defense counsel (*see, People v Droz*, 39 NY2d 457, 462) resulted in his receiving less than meaningful representation. On this record, we reject his argument.

Many of defendant's claims of error by defense counsel are clearly related to counsel's logical determination to employ the insanity defense (*see,* Penal Law § 40.15) in defense of the serious charges in the indictment. Defense counsel's determination to pursue this defense has a sound basis in the record,

---

**3.** We note that defendant waived his presence at the charge conference on the record.

particularly given defendant's history of mental illness, the nature and circumstances of the crime, his bizarre behavior subsequent to his arrest and the overwhelming proof of his commission of the acts constituting the crime of murder. His strategic decision to pursue this defense is clearly demonstrated in his opening statement to the jury where he laid out the defense and the evidence which would support it. This was followed by defense counsel's cogent closing argument in which (1) he reviewed the proof supporting the defense position that defendant was suffering from a mental disease or defect at the time of the crime that prevented defendant from knowing or appreciating the nature and consequences of his conduct or that such conduct was wrong, (2) he referred to defendant's statements to the police and in the stipulation of facts that his horrible acts were "intentional," that he was "a cold blooded murderer" and his reasons for acting as he did, and (3) he posed to the jury the question "are these the statements of a rational, sane person?" Consequently, the record demonstrates a legitimate strategic explanation (cf., People v Rivera, 71 NY2d 705, 709) for counsel's decision not to challenge defendant's inculpatory statements, to stipulate to certain facts which were recited to the jury (including the statement that defendant acted intentionally), and to not call lay witnesses on behalf of defendant. Moreover, a defendant is not constitutionally entitled to a perfect trial, only a fair one (see, People v Benevento, 91 NY2d 708, 712), and the fact that the defense strategy of an insanity defense was unsuccessful is not an automatic indication of defense counsel's ineffectiveness (see, People v Baldi, supra at 146).

Defense counsel in this case investigated and cogently presented the insanity defense on defendant's behalf, including skillfully cross-examining the People's witnesses to bring out facts in support of the insanity defense.[4] Defense counsel's failure to make motions to suppress defendant's statements does not appear from this record to be devoid of a legitimate explanation, it being consistent with the insanity defense which it could reasonably be argued was supported by the statements. On this record, we find that defendant received meaningful representation from defense counsel and his conviction may not be disturbed for this reason. Further, we find nothing presented by defendant to support his claim of ineffective assistance of counsel under the federal constitutional test of Strick-

---

4. We note that the People's expert psychiatrist conceded on cross-examination that defendant was suffering from a mental illness at the time of the crime.

*land v Washington* (466 US 668), as there is nothing in the record from which we are able to conclude that defense counsel's alleged deficiencies prejudiced defendant (*see, People v Ford*, 86 NY2d 397, 405).

Finally, we find no error in County Court's denial of defendant's CPL article 440 motion without a hearing. It appears from County Court's decision that it engaged in a thorough and well-reasoned analysis of defendant's motion and properly concluded in the first instance that it could be decided without a hearing (*see*, CPL 440.30 [1]; *People v Satterfield*, 66 NY2d 796). The motion papers and trial record provided an ample basis for County Court's determination of the merits of defendant's motion without a hearing, and we find no reason to disturb that decision which is supported by the record.

Mercure, J.P., Peters, Mugglin and Rose, JJ., concur. Ordered that the judgment and order are affirmed.